IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MAR 2 2 2011

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

WILLIAM JERMAINE BUTLER,

    Petitioner,

v.                              Civil Action No. **3:10cv446**

WARDEN, LUNENBURG CORRECTIONAL CENTER,

    Respondent.

## MEMORANDUM OPINION

William Jermaine Butler, a Virginia inmate proceeding *pro se*, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Respondent filed a motion to dismiss. Respondent filed a Rule 5 Answer (Docket No. 10), providing Butler with appropriate *Roseboro*[2] notice (Docket No. 12), and Butler responded (Docket No. 14). The matter is ripe for disposition.

## I. PROCEDURAL HISTORY

On August 2, 2007, a jury convicted Butler in the Circuit Court of Southampton County ("Circuit Court") of robbery. The Circuit Court sentenced Butler to thirteen years in prison. Butler appealed his conviction.

### A.    Court of Appeals of Virginia

In his petition for appeal to the Court of Appeals of Virginia, Butler challenged the sufficiency of the evidence to sustain his conviction. Butler claimed he was not guilty of robbery

---

[1] Butler paid the full filing fee and submitted an affidavit in application to proceed *in forma pauperis*. Butler's motion to proceed *in forma pauperis* (Docket No. 8) will be GRANTED.

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

because he did not possess the requisite intent; Butler thought the victim owed him the money that Butler took from the victim. By final order dated November 17, 2008, the Court of Appeals of Virginia denied Butler's petition. *Butler v. Commonwealth*, No. 2706-07-1 (Va. Ct. App. Nov. 17, 2008). The Court of Appeals denied Butler's petition because "a reasonable trier of fact could conclude that [Butler], at best, had no claim of right to the entire $100 that he did take from [the victim], because [the victim] owed [Butler] no more than $35 for the work that [Butler] performed." Opinion entered Sept. 23, 2008, at 3, *Butler*, No. 2706-07-1.

## B. Supreme Court of Virginia

Butler then appealed to the Supreme Court of Virginia, making the same argument. By order dated March 17, 2009, the Supreme Court of Virginia summarily refused the appeal. *Butler v. Commonwealth*, No. 082360 (Va. Mar. 17, 2009).

Butler filed a petition for a writ of habeas corpus in the Supreme Court of Virginia on December 17, 2009 and an amended petition on December 30, 2009. Butler raised the following grounds for relief:

Claim A      (1) The trial court violated defendant's Fifth Amendment[3] right to a grand jury, and (2) Butler's attorney was ineffective for failing to object to this constitutional violation.

Claim B      (1) The trial court failed to instruct on a lesser-included offense, and (2) Butler's attorney was ineffective for failing to seek such an instruction.

Claim C      (1) Improper use of other crime evidence/testimony, and (2) Butler's attorney was ineffective for failing to object to the issue and failing to preserve it for appeal.

---

[3] "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." U.S. Const. amend. V.

2

| Claim D | The prosecutor repeatedly stated his personal belief regarding Butler's guilt and the veracity of the witnesses, and the prosecutor made inflammatory remarks during closing argument.[4] |
| --- | --- |
| Claim E | Butler's attorney was ineffective for failing to object to Butler being restrained in shackles during the jury trial. |
| Claim F | Butler's attorney was ineffective for failing to assert Butler's rights to a speedy trial. |
| Claim G | Butler's attorney was ineffective for failing to object to the trial court's violation of Virginia Code §§ 19.2-165 and 19.2-259. |

Petition for Writ of Habeas Corpus, *Butler v. Warden*, No. 092519 (Va. filed Dec. 17, 2009); *see Butler v. Warden*, No. 092519 (Va. May 27, 2010). The Supreme Court of Virginia dismissed Claims A(1), B(1), C(1), and D because they could have been raised at trial and on direct appeal and, thus, they were not cognizable in a petition for a writ of habeas corpus. *Butler*, No. 092519, at 1–4 (*citing Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974)). The Supreme Court dismissed the remaining claims—all ineffective assistance of counsel claims—on the merits because none of the remaining claims satisfied either of *Strickland*'s[5] two prongs.

---

[4] Butler also made an opaque ineffective assistance of counsel argument related to this claim. Petition for Writ of Habeas Corpus, *Butler*, No. 092519, Ground 14-D, at 3. The Supreme Court of Virginia did not address this argument.

[5] *Strickland v. Washington*, 466 U.S. 668, 687 (1984), permits a finding of ineffective assistance only when the attorney's conduct is deficient and such performance prejudices the petitioner. *Id.*

### C.    28 U.S.C. § 2254 Petition

On June 20, 2010,[6] Butler filed a petition under 28 U.S.C. § 2254 for a writ of habeas

corpus.  In his petition, Butler raises numerous claims for relief:[7]

Claim A(1)    The trial court violated Butler's Fifth Amendment grand jury right because the indictment charged Butler with "unlawfully, feloniously and by presenting a firearm" robbing Birnot,[8] but the Circuit Court did not instruct the jury that it had to find that Butler committed the robbery by presenting a firearm.  The Circuit Court's jury instruction amounted to a constructive amendment to the indictment, which violated Butler's Fifth Amendment right to grand jury presentment.[9] Indictment, *Commonwealth v. Butler*, Nos. 06-526, *et seq.* (Va. Cir. Ct. Jan. 16, 2007).

Claim A(2)    Butler's Double Jeopardy rights were violated because the indictment was insufficiently clear to identify the crime charged.

Claim A(3)    Butler's attorney was ineffective for failing to object to the grand jury right violation.[10]

Claim B(1)    The Circuit Court erred by refusing to give a lesser-included offense instruction.[11]

---

[6] The Court considers a prisoner's federal habeas corpus petition filed on the date the petition is delivered to prison authorities for mailing to a court.  *See Houston v. Lack*, 487 U.S. 266 (1988).

[7] Butler's method of identifying his claims and numbering the pages of his petition is counterintuitive.  For this reason, after careful analysis of Butler's petition, the Court adopts Respondent's method of numbering Butler's claims.

[8] The Court spells the victim's name as it appears in the trial transcript and notes that the victim's name is alternatively spelled "Biernot."

[9] This Claim is the same as Butler's state habeas Claim A(1)

[10] This Claim is the same as Butler's state habeas Claim A(2).

[11] This Claim is the same as Butler's state habeas Claim B(1).

Claim B(2)    Butler's attorney was ineffective for failing to object to the Circuit Court's refusal to give a lesser-included offense instruction.[12]

Claim C    The evidence at trial was insufficient to support his conviction.[13]

Claim D(1)    The Circuit Court improperly admitted evidence regarding Butler's April 2006 assault and robbery of Birnot.[14]

Claim D(2)    The Circuit Court failed to instruct the jury on the limited purpose for which the April 2006 events could be considered.

Claim D(3)    Butler's attorney was ineffective for failing to object to the introduction of the April 2006 events as evidence of other crimes.[15]

Claim E(1)    The prosecutor repeatedly stated his personal belief regarding Butler's guilt and the veracity of the witnesses, and the prosecutor made inflammatory remarks during closing argument.[16]

Claim E(2)    Butler's attorney was ineffective for failing to object to the prosecutor's improper remarks and for failing to request a curing instruction.

Claim F(1)    The Circuit Court erred by tolling the speedy-trial clock during continuances.

Claim F(2)    Butler's attorney was ineffective for failing to object to the Circuit Court tolling the speedy-trial clock during continuances.[17]

Claim G(1)    The Circuit Court erred by requiring Butler to wear shackles during trial and by failing to articulate a sufficient reason for the restraint.

---

[12] This Claim is the same as Butler's state habeas Claim B(2).

[13] This Claim was the claim that Butler raised on direct appeal.

[14] This Claim is the same as Butler's state habeas Claim C(1).

[15] This Claim is the same as Butler's state habeas Claim C(2).

[16] This Claim is the same as Butler's state habeas Claim D.

[17] This Claim is the same as Butler's state habeas Claim F or Amended Claim 2.

Claim G(2)    Butler's attorney was ineffective for failing to object to Butler being tried while restrained in shackles.[18]

Claim H(1)    The Circuit Court violated Butler's rights under Virginia Code §§ 19.2-165 and 19.2-259 because of a pretrial hearing regarding the use of restraints, the admissibility of evidence of other crimes, and the presence of deputies in the courtroom was not transcribed. The Circuit Court also violated the statutes because the delivery of jury instructions was not transcribed.

Claim H(2)    Butler's attorney was ineffective for failing to object to the trial court's violations of Virginia Code §§ 19.2-165 and 19.2-259.[19]

Respondent has moved to dismiss on the grounds that Claims A(2), D(2), E(2), F(1), G(1), and H(1) are procedurally defaulted because Butler never presented these claims to the Supreme Court of Virginia, and is unable to do so now. Respondent has also moved to dismiss on the grounds that Claims A(1), B(1), D(1), and E(1) are procedurally defaulted because the Supreme Court of Virginia dismissed these claims pursuant to *Slayton*, an adequate and independent state ground. Furthermore, Respondent has moved to dismiss Claim C on the ground that the state court's dismissal of this claim on direct appeal was neither contrary to nor an unreasonable application of law. Finally, Respondent has moved to dismiss on the grounds that the remaining claims—A(3), B(2), D(3), F(2), G(2), and H(2)—were all dismissed on the merits by the state court in habeas proceedings, and such dismissal was not contrary to nor an reasonable application of law. *See* 28 U.S.C. § 2254(d).

---

[18]  This Claim is the same as Butler's state habeas Claim E or Amended Claim 1.

[19]  This Claim is the same as Butler's state habeas Claim G or Amended Claim 3.

## II. ANALYSIS

### A.  Exhaustion and Procedural Default

State exhaustion "'is rooted in considerations of federal-state comity,'" and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (*quoting Preiser v. Rodriguez*, 411 U.S. 475, 491-92 & n.10 (1973)).  The purpose of the exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted).  Exhaustion has two aspects.  First, a petitioner must utilize "all available state remedies before he can apply for federal habeas relief." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (*citing Matthews v. Evatt*, 105 F.3d 907, 910-11 (4th Cir. 1997)). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate opportunity to address the constitutional claims advanced on federal habeas.  "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (*quoting Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)).  Fair presentation demands that "'both the operative facts and the controlling legal principles must be presented to

the state court.'" *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (*quoting Matthews*, 105 F.3d at 911). Thus, "the presentation to the state court of a state law claim that is similar to a federal claim does not exhaust the federal claim." *Id.* (*citing Duncan*, 513 U.S. at 366); *see Gray v. Netherland*, 99 F.3d 158, 162-64 (4th Cir. 1996) (concluding petitioner had not fairly presented his legal argument to the state courts). "The burden of proving that a claim has been exhausted lies with the petitioner." *Matthews*, 105 F.3d at 911 (*citing Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir. 1994)).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard*, 134 F.3d at 619. This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (*citing Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (*quoting Coleman*, 501 U.S. at 735 n.1).[20] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

---

[20] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Matthews*, 105 F.3d at 911 (*citing Sweezy v. Garrison*, 694 F.2d 331, 331 (4th Cir. 1982)).

### 1. Claims Which Could Have Been Presented To the State Court But Were Not

Butler never presented Claims A(2), D(2), F(1), G(1), and H(1) to the state court. However, if he were to attempt to do so now, the state court would bar him from doing so pursuant to Virginia Code § 8.01-654(B)(2). That statute provides that a petition for a writ of habeas corpus will not "be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." Va. Code Ann. § 8.01-654(B)(2) (West 2010). All of the facts necessary to raise these claims were available to Butler at the time he filed his first state habeas petition. Thus, these claims are procedurally defaulted. Butler does not offer cause for the default or suggest that a miscarriage of justice will occur if this Court does not address the Claims on the merits. Accordingly, these claims will be DISMISSED.

### 2. Claims Dismissed By The State Court On Procedural Grounds

Butler presented Claims A(1), B(1), D(1), and E(1) to the Supreme Court of Virginia in his state petition for habeas corpus. The Supreme Court of Virginia determined that each of these claims were barred from review because they could have been, but were not, raised at trial and on direct appeal. *Butler v. Warden*, No. 092519, at 1–4 (Va. May 27, 2010) (*citing Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974)). *Slayton* is an adequate and independent state procedural rule when so applied. *See Mu'Min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997). Therefore, these claims are procedurally defaulted.

In Butler's motion for a hearing (Docket No. 15), Butler states that his "cause or prejudice" is located in his § 2254 petition on page three of ground two. (Mot. Plenary Hr'g ¶ 4.) There, Butler asserts that the ineffective assistance of counsel constitutes cause to excuse his default of these claims. That assertion of cause is rejected for the reasons set forth below in

Butler's freestanding ineffective assistance of counsel claims. *See, e.g.*, *Wiggins v. Johnson*, 3:07cv00211, 2009 WL 223522, at *4 (E.D. Va. Jan. 29, 2009). Accordingly, these claims will be DISMISSED.

### B.     Claims Dismissed By The State Court On The Merits

The remainder of Butler's claims—Claims A(3), B(2), C, D(3), E(2), F(2), G(2), and H(2)—were presented to the Supreme Court of Virginia either in Butler's habeas proceedings or on direct appeal.[21] Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, this Court's warrant to grant relief by way of a writ of habeas corpus is circumscribed by 28 U.S.C. § 2254(d) and § 2254(e)(1). Section 2254(e)(1) provides that, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (*citing* 28 U.S.C. § 2254(e)(1)). Under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that under the foregoing provisions, the question "is not whether a federal court believes the state court's determination was incorrect

---

[21]  A reference to Claim E(2) was included in Butler's state habeas petition. Petition for Writ of Habeas Corpus, *Butler*, No. 092519, Ground 14-D, at 3. The Supreme Court of Virginia, however, did not address the argument.

but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (*citing Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

### 1. Claim C: Insufficient Evidence

In Claim C, Butler complains that the evidence at trial was insufficient to support his conviction. Butler raised this issue on direct appeal before the Court of Appeals of Virginia and the Supreme Court of Virginia. A federal habeas petitioner is entitled to relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Greene v. Johnson*, No. 3:10cv53, 2010 WL 5395057, at *6 (E.D. Va. Dec. 28, 2010). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318.

The Court of Appeals of Virginia recounted the evidence against Butler:

> [T]he evidence showed that appellant worked laying bricks for Joseph Birnot on a home that Birnot was contracted to renovate. Birnot agreed to pay [Butler] approximately $35. After doing the work, [Butler] returned to the renovation site. At this time, Birnot was working with others on renovating the kitchen area of the house. [Butler] entered the house and told everyone to leave the room. However, he refused to let Birnot leave. [Butler] initially kept his hands in his pocket during this confrontation with Birnot, and said to Birnot, "I want my money." Birnot responded that he did not owe [Butler] any money. He also asked [Butler] what he had in his pocket. [Butler] lifted his hands out of his pocket slightly, showing what Birnot believed to be the revolver of a gun. He then demanded that Birnot hand over his wallet. [Butler] searched the wallet and took $100. He also took Birnot's two cell phones. [Butler] then fled the renovation site and dropped the cell phones and wallet on the ground down the street.

*Butler v. Commonwealth*, No. 2706-07-1, at 1–2 (Va. Ct. App. Sept. 23, 2008).[22] Based on this evidence, the Court of Appeals of Virginia inquired into "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Butler*, No. 2706-07-1, at 2 (*quoting Kelly v. Commonwealth*, 584 S.E.2d 444, 447 (Va. Ct. App. 2003)). The Court of Appeals first restated the elements of the crime of robbery. *Id.* ("Robbery is a common law offense in Virginia, and is defined as 'the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation.'" (citations omitted) (internal quotation marks omitted)). The Court of Appeals then explained that Butler did not contest the sufficiency of the evidence proving that Butler took money from Birnot against Birnot's will by intimidation. *Id.* Butler's defense to the charge was that he had a bona fide claim of right to the money because Butler believed Birnot owed Butler the money. *Id.* Birnot claimed he owed Butler nothing. *Id.* Taking property under a bona fide claim of right is not robbery, even if the taking is accompanied by violence or intimidation. *Id.* at 3 (*citing Pierce v. Commonwealth*, 138 S.E.2d 28, 31 (Va. 1964)).

In this case, the question was whether Butler "acted in good faith and without criminal intent when he took the $100 from Birnot." *Id.* The Court of Appeals held that "a reasonable trier of fact could conclude that [Butler], at best, had no claim of right to the entire $100 that he did take from Birnot, because Birnot owed appellate no more than $35 for the work that [Butler] performed." *Id.*

---

[22] Because Butler has not rebutted these factual findings by clear and convincing evidence, the Court presumes that they are correct. *Gray*, 529 F.3d at 228 (*citing* 28 U.S.C. § 2254(e)(1)).

Butler does not suggest that this finding "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Thus, the Court will determine whether this finding resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

At trial, testimony revealed that Butler approached Birnot for a construction job. (Trial Tr. 75.) Butler was going to college and had kids. (Trial Tr. 75.) Birnot gave Butler a job for a little while. (Trial Tr. 75.) When it came to Birnot's attention that Butler was not doing a good job, Birnot fired Butler. (Trial Tr. 75.) Some time later, in April 2006, Butler approached Birnot for another job. (Trial Tr. 75.) Birnot gave Butler another chance and permitted him to fix a brick staircase. (Trial Tr. 73, 75, 111.) Birnot agreed to pay Butler $35 to fix the bricks. (Trial Tr. 75.) When Butler was finished, Butler approached Birnot for payment. (Trial Tr. 73.) Birnot told Butler that Birnot was not going to pay Butler because the job was not done correctly. (Trial Tr. 73.) Birnot had to get another worker to re-do the brickwork. (Trial Tr. 73, 112.) When Birnot told Butler that Birnot was not going to pay Butler, Butler hit Birnot. (Trial Tr. 73, 112.) As Birnot spun around, Butler grabbed Birnot's wallet out of Birnot's pocket, which contained $15. (Trial Tr. 73–74, 113.) Butler then knocked Birnot's cell phone out of Birnot's hand. (Trial Tr. 73.) Butler left with the money. (Trial Tr. 73–74.)

In August of the same year, Butler returned to the house where the April confrontation took place.[23] (Trial Tr. 76.) Butler entered the kitchen where Birnot and others were working.

---

[23] It is this second altercation, in August, and not the April confrontation, which was the focus of the trial.

(Trial Tr. 76, 114.) Butler ordered everyone out of the room except for Birnot. (Trial Tr. 76.) Butler demanded money from Birnot. (Trial Tr. 77, 126.) Birnot refused and asked Butler if Butler had a knife. (Trial Tr. 77.) Butler showed Birnot his pocket, and Birnot saw what appeared to be the chamber of a revolver. (Trial Tr. 77–78.) Butler ordered Birnot to hand over his wallet. (Trial Tr. 78.) Butler found a one hundred dollar bill behind Birnot's driver's license in the wallet. (Trial Tr. 78.) Butler then left with Birnot's wallet and Birnot's two cell phones. (Trial Tr. 78–79, 114.)

Based on this evidence presented at trial, this Court finds the Court of Appeals of Virginia's holding was not based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of robbery beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. The evidence demonstrates that Butler took—with the intent to steal—$100 and two cell phones from Birnot's person, against his will, by violence or intimidation  Accordingly, Claim C will be DISMISSED.

### 2.    Claim A(3): Grand Jury Right

In Claim A(3), Butler complains that his attorney was ineffective for failing to object to violation of Butler's Fifth Amendment grand jury right. Butler presented this claim to the Supreme Court of Virginia in his habeas proceedings as Claim A(2).

The indictment in question states in pertinent part: "[O]n or about the 17th day of August, 2006, . . . William Butler, did unlawfully, feloniously, *and by presenting a firearm* rob Joseph Biernot . . . ." Indictment, *Commonwealth v. Butler*, Nos. 06-526, *et seq*. (Va. Cir. Ct.

Jan. 16, 2007) (emphasis added). The Circuit Court judge instructed the jury that they must find the following elements beyond a reasonable doubt to return a verdict of guilty:

(1)    That the defendant intended to steal; and

(2)    That the defendant took U.S. Currency; and

(3)    That the taking was from Joseph Biernot or in his presence; and

(4)    That the taking was against the will of the owner or possessor; and

(5)    That the taking was accomplished by violence and threat of serious bodily harm.

Jury Instruction No. 6, *Butler*, Nos. 06-526, *et seq*. Butler claims that the judge constructively amended the indictment in violation of Butler's Fifth Amendment right to a grand jury because the judge failed to instruct the jury that they must find that Butler presented a firearm while robbing Birnot. Accordingly, Butler argues, his attorney rendered ineffective assistance for failing to object to the jury instruction.

The Fifth Amendment's grand jury clause has never been extended to the states. *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972) ("Although the Due Process Clause guarantees petitioner a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury."). "Since a state is constitutionally free to dispense with the grand jury indictment altogether and may proceed on a prosecutor's information if it so chooses, the legality of an amendment to an indictment is primarily a matter of state law." *United States ex rel. Wojtycha v. Hopkins*, 517 F.2d 420, 425 (3d Cir. 1975) (internal citation omitted). In Virginia, "[t]he purpose of an indictment is to give the accused notice of the nature and character of the offense charged." *Cantwell v. Commonwealth*, 347 S.E.2d 523, 524 (Va. Ct. Ap. 1986) (*citing Hairston v. Commonwealth*, 343 S.E.2d 355, 357 (Va.

Ct. App. 1986)). Thus, Virginia courts liberally allow amendments, "provided that the amendment does not change the nature or character of the offense charged." *Id.* (*citing* Va. Code Ann. § 19.2-231).

The Supreme Court of Virginia dismissed this claim because Butler's attorney's conduct satisfied neither the performance nor prejudice prong of *Strickland. Butler*, No. 092519, at 2. In so holding, the Supreme Court determined: "The record, including the indictment, . . . demonstrates that petitioner was given notice of the nature and character of the charged offense, referenced in the indictment as a violation of Code § 18.2-58,[24] which does not require proof of the use of a firearm." *Id.* Furthermore, the Supreme Court of Virginia concluded that there was no "reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different." *Id.* The Supreme Court of Virginia's conclusion that Butler's challenge to the amendment of the indictment lacked merit is fatal to Butler's current claim of ineffective assistance of counsel. *See Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010) (reversing district court's "misguided" conclusion that it could determine state court had incorrectly decided state law evidentiary issue in granting relief upon an ineffective assistance of counsel claim); *Hopkins*, 517 F.2d at 425. Accordingly, Claim A(3) will be DISMISSED because Butler has not demonstrated deficiency or prejudice.

---

[24] This statute provides: "If any person commit robbery by. . . putting a person in fear of serious bodily harm, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever, he shall be guilty of a felony . . . ." Va. Code Ann. § 18.2-58 (West 2006).

### 3.    Claim B(2): Lesser-Included Offense Instruction

In Claim B(2), Butler complains that his attorney was ineffective for failing to object to the Circuit Court's refusal to give a lesser-included offense instruction. Butler presented this claim to the Supreme Court of Virginia in his habeas proceedings as Claim B(2). The Supreme Court of Virginia determined that the claim "satisfie[d] neither the 'performance' nor the 'prejudice' prong of the two-part test enunciated in *Strickland*." *Butler*, No. 092519, at 3. In so holding, the Supreme Court of Virginia stated, "[Butler] fails to identify the lesser-included offense that he contends the jury should have been instructed upon." *Id.* Furthermore, the Supreme Court of Virginia concluded that there was no "reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different." *Id.*

In Butler's state habeas petition, however, Butler does identify the crimes which he believes warranted a lesser-included offense instruction. In his state habeas petition, Butler states, "Butler contends that although the indictment does not state the amount taken, the testimony would have supported larceny, petty larceny, or larceny to the person." Petition for Writ of Habeas Corpus, *Butler*, No. 092519, Ground 14-B, at 2. In his § 2254 petition, Butler again contends that he was entitled to an instruction on the lesser-included offense of larceny. (§ 2254 Pet. Ground 2, at 2.)

"Larceny is 'the wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and with the intention to deprive the owner thereof permanently.'" *Yellardy v. Commonwealth*, 561 S.E.2d 739, 743 (Va. Ct. App. 2002) (*quoting Welch v. Commonwealth*, 425 S.E.2d 101, 104 (Va. Ct. App. 1992) (internal quotation marks omitted)). "'In determining whether to instruct the jury on a lesser-included offense, the

evidence must be weighed in the light most favorable to the accused's theory of the case.'" *Id.* (*quoting Hunt v. Commonwealth*, 488 S.E.2d 672, 674 (Va. Ct. App. 1997) (internal quotation marks omitted)). Butler's theory of the case—viewing the evidence in the light most favorable to Butler—is that Butler had no intent to steal because Birnot *owed* Butler the money. "Thus, under this version of the evidence it did not support a larceny instruction because no intent to steal existed . . . ." *Id.* Butler's theory of the case did not support a defense theory that Butler stole the money from Birnot. "Therefore, he was not entitled to an instruction of a lesser-included offense of petit larceny." *Id.*

Attorneys are not required to make futile objections. *Sharpe*, 593 F.3d at 383 (*quoting Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005)). Thus, Butler has not demonstrated that his counsel acted deficiently. Accordingly, Claim B(2) will be DISMISSED.

### 4.    Claim D(3): Evidence of Other Crimes

In Claim D(3), Butler complains that his attorney was ineffective for failing to object to the introduction of the April 2006 events as hearsay or evidence of "other crimes." Butler presented this claim to the Supreme Court of Virginia in his habeas proceedings as Claim C(2). The Supreme Court of Virginia dismissed this claim, reasoning as follows:

> The record, including correspondence between petitioner and counsel, demonstrates that the evidence at issue was admitted by the court for the limited purpose of proving petitioner's motive or intent, as petitioner's defense was that he had merely been trying to collect money due him. The jury was instructed to consider this evidence only for its limited purpose, and petitioner proffers no evidence that the jury failed to follow the court's instructions. In addition, none of the statements constituted hearsay, as they were statements of a party.

*Butler*, No. 092519, at 4. The Supreme Court of Virginia held that Butler "failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different." *Id.*

Indeed, the Circuit Court instructed the jury as follows:

> You may consider evidence that the defendant committed an offense other than the offense for which he is on trial only as evidence of the defendant's motive; as evidence of the defendant's intent; as evidence of the defendant's scheme or plan; as evidence of the defendant's identity; as evidence of the defendant's knowledge; as evidence of the defendant's conduct and feelings toward the victim and relations between them; as evidence of the defendant's malice; as evidence of the defendant's premeditation; as evidence of the defendant's opportunity; as evidence of the absence of mistake or accident on the part of the defendant; as evidence to negate the defense that the defendant was merely an innocent bystander; as evidence of the unique nature of the method of committing the crime charged in connection with the offense for which he is on trial and for no other purpose.

Jury Instruction No. 8, *Butler*, Nos. 06-526, *et seq.* Butler's defense at trial was that Birnot owed him money. (Trial Tr. 192 ("I think that's clear. There's no confusion over the fact that there's a dispute over money.").) Thus, evidence of the April 2006 events "was admitted by the court for the limited purpose of proving petitioner's motive or intent." *Butler*, No. 092519, at 4. Butler has not demonstrated that his attorney was deficient or that, but for counsel's alleged deficiencies, the result of the proceeding would have been different. Accordingly, Claim D(3) will be DISMISSED.

### 5. Claim E(2): Prosecutorial Misconduct

In Claim E(2), Butler complains that his attorney was ineffective for failing to object to the prosecutor's improper remarks during closing argument and for failing to request a curative instruction. Respondent has moved to dismiss this claim on the ground that Butler never presented it to the Supreme Court of Virginia. Butler, however, did make a passing reference to

it in his state habeas petition. Petition for Writ of Habeas Corpus, *Butler*, No. 092519, Ground 14-D, at 3. The Supreme Court of Virginia did not address the argument. Here, Butler offers it as cause for his default of state habeas Claim D.[25] (§ 2254 Pet. Ground 5, at 5; Motion for Hearing (Docket No. 15) ¶¶ 9–10.) For that reason, the Court will address the merits of this claim here.

Butler complains about the following statements by the prosecutor during closing arguments:

| | |
|---|---|
| Statement One: | "What you need to ask yourself is was [Birnot] being truthful with you with respect to these incidents where he was robbed? The answer to that question is yes." (Trial Tr. 185.) |
| Statement Two | "Does [Birnot] remember who robbed him? He certainly does. . . . No question the defendant is the person that robbed him." (Trial Tr. 185.) |
| Statement Three | "[Witness] Charlie Brown was arrested in October. . . . So the conversation that Charlie Brown had with the defendant absolutely happened after the crime, and that's important for you to remember that." (Trial Tr. 187.) |
| Statement Four | "He's guilty of robbery." (Trial Tr. 189.) |
| Statement Five | "Now [Witness] Lee Urquhart says he went outside. And [Witness] Mr. Brooks stayed in. That's true." (Trial Tr. 199.) |
| Statement Six | "[Witness] Mr. Brooks'[s] testimony was believable, ladies and gentlemen." (Trial Tr. 200.) |

It is "'improper for a prosecutor to directly express his opinion as to the veracity of a witness.'"

*United States v. Loayza*, 107 F.3d 257, 262 (4th Cir. 1997) (*quoting United States v. Moore*, 11

---

[25] It is not clear that Butler intended to present all of his claims of ineffective assistance of counsel as freestanding claims for relief or merely as cause to excuse his default. Nevertheless, the Supreme Court of Virginia considered the merits of each ineffective assistance claim except for the prosecutorial misconduct claim here.

F.3d 475, 481 (4th Cir. 1993)). "Nonetheless, comments made by a prosecutor during closing arguments will not warrant a new trial unless they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (*quoting United States v. Francisco*, 35 F.3d 116, 120 (4th Cir. 1994)).

To determine whether the comments so infected the trial, the Court considers (1) "whether the comments mislead the jury and prejudiced the [defendant];" (2) "were they isolated or extensive;" (3) "absent the remarks, what was the weight of the evidence against the accused;" and (4) "were the prosecutor's remarks deliberate." *Id.* (*citing Moore*, 11 F.3d at 482). Based on these factors, the Court holds that any error was harmless.

Statements One and Two did not mislead the jury. In context, the statements were used to focus the jury on the reliability of the victim's testimony in light of his admittedly faulty memory. The prosecutor explained that while the victim could not remember what he ate for breakfast three months ago, he could remember who had taken his money. Statement Three did not mislead the jury. The prosecutor was placing events in a time line and was explaining that witness Charlie Brown had the opportunity to speak with Butler when they were incarcerated together. The prosecutor did not vouch for Brown's truthfulness. Statement Four, viewed in context, was a conclusion that the prosecutor believed the jury should draw from the evidence. (Trial Tr. 189.) The prosecutor stated:

> He's guilty of robbery. He's guilty of using a firearm in the commission of robbery. All of this evidence together I would submit to you leaves to the undeniable conclusion that this man is guilty of robbery. He took something that was not his and he took it with a gun. He used that gun to intimidate and put he put [sic] his hands on Mr. Birnot going through his pockets and in an act of violence. So I would ask you to please find him guilty.

(Trial Tr. 189.) "The government may attempt to persuade the jury to draw suggested inferences unfavorable to the defense, as long as the prosecutor's *own opinion* . . . is not urged on the jury." *United States v. Smith*, 982 F.2d 681, 683 (1st Cir. 1993) (*citing United States v. Mount*, 896 F.2d 612, 625 (1st Cir. 1990)). Statement Five did not mislead the jury. The prosecutor was admitting that Witness Urquhart did not personally witness the August robbery while segueing into the undisputed fact that Witness Brooks stayed in the doorway of the kitchen where the crime occurred. Lastly, Statement Six did not mislead the jury. Although the prosecutor began with the idea that Witness Brooks's testimony was believable, the prosecutor then explained how Witness Brooks's testimony was believable by demonstrating how it paralleled the victim's own testimony. The prosecutor took these steps so that the jury could make their own determination of Brooks's veracity. The six statements did not use the word "I" to indicate that these were personal feelings or personal opinions. *See Loayza*, 107 F.3d at 263. These six remarks were also isolated, not extensive, and there was no overt purposefulness in the prosecutor's words. Viewed in comparison with the extensive evidence presented at trial, recounted above, it is unlikely that the weight of the evidence in Butler's favor was meaningfully impaired to the extent of infecting the trial with unfairness.

Butler has not demonstrated that his attorney's performance was deficient, or that, but for his attorney's allegedly deficient performance, the result of the proceeding would have been different. Accordingly, Claim E(2) will be DISMISSED.

## 6. Claim F(2): Speedy Trial Violation

In Claim F(2), Butler complains that his attorney was ineffective for failing to object to the Circuit Court tolling the speedy-trial clock during continuances. Butler presented this claim to the Supreme Court of Virginia in his habeas proceedings as Claim F or Amended Claim 2.

The Supreme Court of Virginia dismissed this claim, reasoning as follows:

> Petitioner contends that the Commonwealth's case was enhanced during this period of time and that a witness who had been found prior to the original trial date moved after the continuance was granted and was unable to be located at the time of trial.
>     The Court holds that this claim satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript, demonstrates that petitioner's original trial was scheduled within the statutory period and that the only continuance was granted upon the withdrawal of defense counsel and the appointment of new counsel to represent petitioner. Petitioner did not object to the continuance granted so that new counsel could prepare. Furthermore, petitioner fails to allege how the Commonwealth's case was enhanced and fails to identify the witness he was unable to locate or what information the witness would have presented.

*Butler*, No. 092519, at 5. In Butler's § 2254 petition, Butler identifies the missing witness as Charles Harvey. Butler still fails to identify what information the witness would have presented. *See Bassette v. Thompson*, 915 F.2d 932, 940 (4th Cir. 1990). In this case, the Supreme Court of Virginia found that Butler failed both prongs of *Strickland* because Butler did not object. "Under [Virginia Code] § 19.2-243(4),[26] an accused may stand mute when the court sets the trial date—but he must speak, or risk waiving his speedy trial rights, when the court continues the trial to a subsequent date." *Commonwealth v. Jordan*, Nos. CR00F00349, 350, 351, 2000 WL

---

[26] This statute provides, in pertinent part, that the speedy trial clock does not run if the failure to try the accused was caused "[b]y continuance granted on the motion of the accused or his counsel, or by concurrence of the accused or his counsel in such a motion by the attorney for the Commonwealth, or by the failure of the accused or his counsel to make a timely objection to such a motion by the attorney for the Commonwealth." Va. Code Ann. § 19.2-243.

1875859, at *6 (Va. Cir. Ct. Dec. 22, 2000). "'Counsel is not required to engage in the filing of futile motions.'" *Sharpe*, 593 F.3d at 383 (*quoting Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005)). Butler has not demonstrated that his attorney's performance was deficient, or that, but for his attorney's allegedly deficient performance, the result of the proceeding would have been different. Accordingly, Claim F(2) will be DISMISSED.

### 7. Claim G(2): Shackled During Trial

In Claim G(2), Butler claims that his attorney was ineffective for failing to object to Butler being tried while restrained in shackles. Butler presented this claim to the Supreme Court of Virginia in his habeas proceedings as Claim E or Amended Claim 1.

The Supreme Court of Virginia dismissed this claim, reasoning as follows:

> The record, including the trial transcript, demonstrates that the trial court deemed it necessary to restrain petitioner during the trial, and that the court utilized screens around defense table to prevent the members of the venire from seeing petitioner's shackles. Petitioner does not allege that any member of the venire saw the restraints.

*Butler*, No. 092519, at 4–5. The Supreme Court of Virginia held that Butler had "failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different." *Id.* at 5. The Supreme Court of Virginia's holding is not based on an unreasonable application of federal law, or an unreasonable determination of the facts.

The trial transcript reveals that the Circuit Court not only took measures to reduce the possibility that a juror would see Butler's restraints, but the Circuit Court also explained this fact to Butler at trial:

THE COURT:        All right, Mr. Butler, you may be seated. All right, Mr. Butler, I will say this. Mr. Butler, for your information you are restrained for reasons satisfactory to the Court. We have

24

placed screens around the table in order for the jury not to know that you are restrained in anyway [sic]. You are free to if you wish to place your hands on the table like you have if that's quite all right by you. But you have to understand that you're not required to have your hands on table. The Court is here to take reasonable steps to prevent the jury from seeing any restraints, any physical restraints on you in order that you will have a fair trial. So if you choose to put your hands up on top of the table the jury may well see that you have physical restraints on your hands. So you may make that choice yourself. But as far as the Court is concerned you may keep your hands under the table. That way the jury will not have an opportunity to see that you have physical restraints. Any walking or going or coming to the courtroom or to the witness stand will be done with the jury out of the courtroom. So once again, they will not see, at least as this Court goes, they will not see that you have physical restraints on. I point that out to you.

(Trial Tr. 10–11.) Butler does not allege that any juror saw Butler with shackles on or that he was unable to communicate with his attorney. *Illinois v. Allen*, 397 U.S. 337, 344 (1970). Butler has not demonstrated that his attorney acted deficiently or that, but for the alleged deficiency, the result of the proceeding would have been different. Accordingly, Claim G(2) will be DISMISSED.

### 8.  Claim H(2):  Failure To Record Proceedings

In Claim H(2), Butler claims that his attorney was ineffective for failing to object to the trial court's violation of Virginia Code §§ 19.2-165 and 19.2-259. Butler presented this claim to the Supreme Court of Virginia in his habeas proceedings as Claim G or Amended Claim 3.

Specifically, Butler states, "[T]he trial judge violated Va. Code Ann. 19.2-165, and 19.2-259, and counsel was ineffective for failing to object to Butler's right to a fair trial." (§ 2254 Ground 8, at 1 (capitalization corrected).) Butler then complains that a pre-trial hearing was neither transcribed nor recorded. This pre-trial hearing regarded the use of restraints, the use of

25

other-crime testimony, and the presence of five deputies in the courtroom. Butler argues that his attorney should have objected to the absence of a court reporter during these proceedings because section 19.2-165 of the Virginia Code states in pertinent part, "In all felony cases, the court or judge trying the case shall by order entered of record provide for the recording verbatim of the evidence and incidents of trial either by a court reporter or by mechanical or electronic devices approved by the court." Va. Code Ann. § 19.2-165 (West 2007). He also argues that the failure to record the proceeding violated section 19.2-259, which provides, "A person tried for felony shall be personally present during the trial." Va. Code Ann. § 19.2-259 (West 2007).

The Supreme Court of Virginia dismissed this claim because Butler was not prejudiced by his attorney not objecting. Even if the pre-trial hearing had been recorded, the underlying results from the hearing would not have been different. In the pretrial hearing, the Court ordered Butler to be restrained during trial and permitted the introduction of other-crimes evidence. Had Butler then appealed these issues, the result would have been the same as the Supreme Court of Virginia's analysis of Butler's claim in his habeas proceedings. The Supreme Court of Virginia concluded that Butler "failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different." *Butler*, No. 092519, at 6. In his § 2254 petition, Butler merely restates his claims that he was prejudiced by the use of restraints and by the fact that "other crimes" evidence was introduced. The Court dismisses those claims *supra*, in Parts II.B.4 and II.B.7. Butler does not allege that he was prejudiced by the presence of five deputies in the courtroom. Butler fails to demonstrate how he was prejudiced by any failure to comply with section 19.2-165 of the Virginia Code.

26

Butler also argues that he should have been present when the jury instructions were given. (§ 2254 Pet. Ground 8, at 3.) Butler claims that there is no record that he was present. Conspicuously absent from Butler's petition, however, is the allegation that he was absent when the jury instructions were read. The trial transcript indicates that after Court took a "brief recess," the defense was offered the opportunity to present evidence, which the defense declined to do. (Trial Tr. 178.) The Court then instructed the jury. (Trial Tr. 179.) Immediately thereafter, the prosecutor delivered his closing argument. (Trial Tr. 179.) Because Butler cannot show that his attorney's conduct was either deficient or prejudicial, Claim H(2) will be DISMISSED.

## III. CONCLUSION

For the reasons stated above, Respondent's Motion to Dismiss (Docket No. 9) will be GRANTED. Butler's claims will be DISMISSED. The petition for writ of habeas corpus will be DENIED. Butler's motion for hearing (Docket No. 15) will be DENIED AS MOOT. The requests in Butler's letter received by the Court on January 28, 2011 (Docket No. 16) seeking appointment of counsel and a copy of the transcript will be DENIED. This action will be DISMISSED.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

No law or evidence suggests that Butler is entitled to further consideration in this matter. A certificate of appealability will therefore be DENIED.

An appropriate Final Order will accompany this Memorandum Opinion.

Date: 3-21-11
Richmond, Virginia

/s/
James R. Spencer
Chief United States District Judge